UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIMBERLY JEAN WOMACK,

    Plaintiff,

v.                                                Case No. 8:21-cv-984-TPB-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

The Plaintiff seeks judicial review of the Commissioner's decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons discussed below, I respectfully recommend that the Commissioner's decision be affirmed.

I.

The Plaintiff was born in 1979, completed some high school, and has past relevant work experience as a receptionist and ice cream server. (R. 39, 61, 107). In July 2017, the Plaintiff applied for DIB and SSI, alleging disability as of May 1, 2016,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the Defendant in this suit.

due to nausea; fatigue; fibromyalgia; debilitating headaches; impaired memory; arthritic changes; cervical stenosis; widespread musculoskeletal pain; unsteadiness and balance problems; repeated back pain/spasm episodes; disc herniations, compression, and degeneration; hypersensitivity to light and noise; trigeminal neuralgia and muscle contraction headaches; bouts of blurry vision and extreme drowsiness, confusion and difficulty in thinking clearly and in concentrating; and throbbing and pulsating pain on the left side of her face and scalp. (R. 107–08, 124–25). The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration. (R. 123, 140, 161, 178).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in December 2019. (R. 49–106, 208–11). The Plaintiff was represented by counsel at that proceeding and testified on her own behalf. (R. 52, 61–94). A vocational expert (VE) also testified. (R. 94–103).

In a decision issued in January 2020, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since her alleged onset date in May 2016; (2) had the severe impairments of obesity, anxiety, depression, bipolar disorder, intermittent asthma, trigeminal neuralgia, migraines without aura, obstructive sleep apnea with hypersomnia, cervical and lumbar degenerative disc disease, irritable bowel syndrome with gastroenteritis and colitis, and interstitial cystitis with a bladder stimulator implant; (3) did not, however, have an impairment or combination of

impairments that met or medically equaled any of the listings;[2] (4) had the residual functional capacity (RFC) to perform light work subject to certain physical and environmental limitations;[3] and (5) based on the VE's testimony, could not engage in her past relevant work but was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy. (R. 19–42). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 42).

The Appeals Council denied the Plaintiff's request for review. (R. 5–7). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[4] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

---

[2] The listings are found at 20 C.F.R. pt. 404, subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[3] These limitations included that the Plaintiff could not climb ladders and could only occasionally climb stairs, balance, stoop, kneel, crouch, or crawl. (R. 28).

[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[5] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals any of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

---

[5] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted). In evaluating whether substantial evidence bolters the Commissioner's decision, a court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). While a court will defer to the Commissioner's factual findings, it will extend such deference to her legal conclusions. *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citing *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

### III.

The Plaintiff raises two challenges on appeal: (1) the ALJ's RFC determination at step four was not supported by substantial evidence; and (2) the ALJ erred at step five in relying on the VE's testimony because the hypothetical questions he posed to the VE did not properly reflect the Plaintiff's limitations. (Doc. 26). Upon careful

5

review of the parties' submissions and the pertinent portions of the record, I find that the Plaintiff's challenges lack merit.

A.

As noted above, the ALJ's task at step four is to determine the claimant's RFC and her ability to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To do so, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)). Medical opinions are statements from physicians or other acceptable medical sources concerning what a claimant may be able to do despite her impairments; whether the claimant is limited in her ability to perform various work activities; and whether the claimant can see, hear, or use her other senses or "adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

The Regulations governing the evaluation of medical opinions were amended for disability applications filed on or after March 27, 2017, as this one was. 20 C.F.R. §§ 404.1520c, 416.920c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021). The ALJ now determines the persuasiveness of a medical opinion instead of generally basing its weight on the opinion's source. *Compare* 20 C.F.R. §§ 404.1527, 416.927(c) *with* 20 C.F.R. §§ 404.1520c, 416.920c. In conducting this analysis, an ALJ must consider the following five factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5)

6

any other relevant factors "that tend to support or contradict a medical opinion," such as whether the source is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* §§ 404.1520c(c), 416.920c; *see also Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of these factors, supportability and consistency are the most important. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c; *Nixon*, 2021 WL 4146295, at *3 (citation omitted). Supportability addresses the extent to which a medical source has articulated record evidence bolstering his own opinion, while consistency concerns the degree to which a medical source's opinion conforms to other evidence in the record. 20 C.F.R. § 404.1520c(b)(1)–(2), (c)(1)–(2), 416.920c(b)(1)–(2), (c)(1)–(2); *Barber v. Comm'r of Soc. Sec.*, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted). The amended Regulations require an ALJ to discuss supportability and consistency but do not obligate him to explain how he evaluated the other three factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted). In the end, the amended Regulations—like their predecessors—do not preclude an ALJ from rejecting any medical opinion if the evidence supports a contrary finding. *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)).

In this case, the Plaintiff's treating neurologist, Dr. Shrinath Kamat with Bay Area Neurology, rendered several assessments of the Plaintiff after he began treating her in July 2016. (R. 37–38, 1210–13). Three of Dr. Kamat's opinions—a Narrative Neurological Report, a Sedentary Requirements Checklist, and a Physical Capacities Evaluation—are at issue here. (Doc. 26 at 24–25).[6]

In the Narrative Neurological Report, which is undated, Dr. Kamat stated that the Plaintiff had "been under [his] neurological care since July 1, 2016," and that she was initially treated for a "probably idiopathic medical condition with recurrent intractable headaches, eye pain and episodes of severe throat, neck/jaw pain and swelling on the left side of the parotid gland with parotitis subsequently leading into left facial pain[ and] atypical and trigeminal neuralgia." (R. 1210). Dr. Kamat also stated that the Plaintiff suffered "from wide-spread musculoskeletal and joint pain related to fibromyalgia with intermittent flare-ups related to her physical activity, stress level, lack of sleep, etc.," as well as from chronic low back pain due to "multiple disc herniations and narrowing of the spinal foramina L4-5[7] with cervical stenosis with degenerative spinal disease." *Id.* Dr. Kamat concluded that the Plaintiff's "chronic conditions" caused "pain, fatigue, drowsiness, dizziness, confusion, unsteadiness, [and] forgetfulness," which, when compounded by the effect of the medication she

---

[6] The Narrative Neurological Report, Sedentary Requirements Checklist, and Physical Capacity Evaluation are located in the administrative record at exhibits 30F/1, 30F/3, and 30F/4, respectively. (R. 1210–13).

[7] L4 and L5 refer to the fourth and fifth discs of the lumbar spine, respectively. *See* SPINE-HEALTH, https://www.spine-health.com/conditions/spine-anatomy/all-about-l4-l5-spinal-segment (last visited July 28, 2022).

8

was taking for her various maladies, rendered her "disabled for her activities of daily living" and "gainful employment." *Id.*

In the Sedentary Requirements Checklist, which was drafted in October 2019, Dr. Kamat opined, *inter alia*, that the Plaintiff could not perform any activity on a sustained basis, could not sit for up to six hours in a normal position, and could not walk a short distance. (R. 1212). Dr. Kamat further opined that the Plaintiff's "physical pain, fatigue, [and] impaired memory and attention [were] limiting [her capacity] to carry out [activities of daily living] or [to engage in a] gainful job." *Id.*

In the Physical Capacity Evaluation, which was also prepared in October 2019, Dr. Kamat found, *inter alia*, that the Plaintiff could stand for one hour and walk for two hours in an eight-hour workday, could not lift or carry any weight on a sustained basis, and could not squat, crawl, or climb. (R. 1213). As he did with respect to the Sedentary Requirements Checklist, Dr. Kamat determined that the Plaintiff's "physical pain, fatigue, [and] impaired memory and attention" inhibited her ability to engage in both activities of daily living and gainful employment. *Id.*

In his decision, the ALJ discussed Dr. Kamat's treatment of the Plaintiff during his review and evaluation of the medical evidence of record (R. 33–38), including in the following excerpt, which includes specific citations to information contained in Dr. Kamat's materials:

> The claimant's argument [relating to the disabling intensity, persistence, and limiting effects of her symptoms] principally relies on the opinion of her neurologist, Dr. Shrinath Kamat. However, other than a reference to mild facial swelling in July of 2016 and intermittent acute facial pain,

9

>Dr. Kamat's own notes consistently documented normal musculoskeletal and neurological examinations (32F/23, 54, 56, 35F). Dr. Kamat attempted treatment with several different medications, many of [which] reportedly caused the claimant significant side effects, escalating to her present regimen which includes morphine, fioricet, Tiazidine, Tylenol with codeine, and Tegretol with occasional marijuana use. Throughout March of 2019, the claimant continued to struggle with withdrawal symptoms, medication side effects, and medication balancing as her primary care provider attempted to wean her off her less conservative medications (33F). Dr. Kamat's own exam notes and neurological examinations in the record show consistently normal results, such as normal gait, negative straight leg raise tests, and normal upper and lower extremity strength (19F/17, 20, 25, 21F/9, 25F/2, 32F/19, 54, 33F/1, 34F/12). Dr. Kamat further attributed her disability in part due to cervical stenosis, which is not substantiated by cervical imaging nor supported by examination notes (16F/52). Dr. Kamat opined that for her health she needed to manage her financial stress, which was exacerbating her symptoms and causing flareups.

(R. 36.)

The ALJ ultimately rejected Dr. Kamat's assessments in substantial part, reasoning (again with citations to the record):

>[T]he undersigned finds the assessment of the claimant's treating neurologist, Dr. Shrinath Kamat, unpersuasive overall (19F/25, 30F/1, 32F/49, 33F/1, 6). Dr. Kamat had a long[-]term treating relationship with the claimant and issued multiple medical source statements between July of 2016 and October of 2019. In September of 2016, Dr. Kamat noted complaints of severe pain, with fogginess and dizziness (32F/49). As the claimant had not resumed gainful employment, Dr. Kamat opined she continued to be temporarily disabled. In November of 2016, Dr. Kamat opined she continued to remain disabled temporarily for work until the end of February 2017 (19F/25). In March of 2019, Dr. Kamat diagnosed the claimant with fibromyalgia, back pain[,] and cervical stenosis, and confirmed her diagnoses of chronic anxiety and depression (33F/1). However, cervical stenosis was not substantiated by diagnostic

10

>imaging[,] nor was such noted in the examination notes (16F/52). Dr. [Kamat] opined that the claimant required significant assistance both physically and emotionally to carry out her daily activities, and remained disabled, as she needed to avoid financial stress.
>
>In April of 2019, Dr. [Kamat] further opined that the claimant remained disabled due to chronic pain and difficulty concentrating or remembering caused by her underlying depression and anxiety (33F/6). In October of 2019, Dr. Kamat made specific functional recommendations that the claimant could only stand for [one] hour, walk for [two] hours, sit for [one] hour, could not lift anything, could not use her hands for pushing or pulling, could not use her feet to operate foot controls, could never squat, crawl, or climb, and could only occasionally bend. Dr. Kamat confirmed her diagnoses of physical pain and fatigue, with impaired memory and attention. *While Dr. Kamat was a treating source, Dr. Kamat's extreme opinions were unsupported by the overall record and inconsistent with the treatment record (e.g. 9F/17, 20, 19F/25, 21F/9, 25F/2, 32F/19, 54, 33F/1, 34F/12). The undersigned therefore finds them unpersuasive overall.*

(R. 37–38) (emphasis added).

Despite largely discounting Dr. Kamat's determinations, the ALJ did credit Dr. Kamat's conclusion—as reflected in the Narrative Neurological Report—that the Plaintiff's financial stress exacerbated her symptoms and caused flare-ups. (R. 36). To account for this concern, the ALJ included in the Plaintiff's RFC "moderate adaptive limitations with respect to workplace stress," even though the ALJ recognized that he could not consider restrictions "based on financial stress to support disability." *Id.*

The crux of the Plaintiff's first challenge is that the ALJ erred because he "provide[d] no reasoning for finding Dr. Kamat's opinion . . . unpersuasive" and that the ALJ's subsequent RFC determination, which is predicated at least in part upon his

11

evaluation of Dr. Kamat's assessments, is therefore fatally defective. (Doc. 26 at 21–27). These assertions do not survive scrutiny.

As an initial matter, the Plaintiff fails to argue or present facts demonstrating which specific portions of the Narrative Neurological Report, Sedentary Requirements Checklist, and Physical Capacity Evaluation the ALJ should have included in his RFC determination and in his hypotheticals to the VE. Instead, the Plaintiff vaguely contends that Dr. Kamat's opinions "are clearly at odds with the [ALJ's RFC finding] regarding the [Plaintiff's] physical and mental abilities." (Doc. 26 at 25–26). This lack of specificity is problematic because, as noted above, the ALJ accounted for at least one of the limitations identified by Dr. Kamat and rejected those portions of Dr. Kamat's assessments which were reserved for the Commissioner.[8] (R. 36, 39). The Plaintiff does not address these aspects of the ALJ's decision.

The Plaintiff also fails to address whether—aside from the persuasiveness question—the information and exhibits the ALJ cited in his decision as part of his evaluation of Dr. Kamat's records and attendant opinions constitute substantial evidence. As a result, the Plaintiff has waived any such argument. *See Walker v. Soc. Sec. Admin., Comm'r*, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (per curiam) (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014)); *Battle*

---

[8] Opinions reserved for the Commissioner may be disregarded by an ALJ, and the Plaintiff does not claim otherwise. *See* 20 C.F.R. § 404.1520b (defining evidence that "is inherently neither valuable nor persuasive" as including statements on subjects "reserved to the Commissioner" and "[s]tatements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work"); *Id.* § 416.920b (same).

*v. Comm'r, Soc. Soc. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) (quoting *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998)); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam) (citing *Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995)).

Irrespective of these issues, it is evident from the ALJ's decision taken as a whole that he deemed Dr. Kamat's opinions to be inconsistent with and unsupported by Dr. Kamat's own treatment records from July 2016, November 2016, August 2017, November 2017, and March 2019 (exhibits 19F, 32F, 33F, and 34F), as well as those compiled by three other healthcare providers who saw the Plaintiff, Dr. Sam Diasti (exhibit 9F), Dr. Farrukh Zaidi (exhibit 21F), and Dr. Andrew Spencer (exhibit 25F). (R. 38). On the matter of supportability, for example, the ALJ found that contrary to Dr. Kamat's assessments regarding the Plaintiff's restrictions, "other than a reference to mild facial swelling in July of 2016 and intermittent acute facial pain, Dr. Kamat's own notes consistently documented normal musculoskeletal and neurological examinations." (R. 36) (citing exhibits 32F and 35F). The ALJ also pointed out that Dr. Kamat's records similarly reflected "consistently normal results, such as normal gait, negative straight leg raise tests, and normal upper and lower extremity strength." *Id.* (citing exhibits 19F, 32F, 33F, and 34F).

As for the matter of consistency, the ALJ likewise found that the records prepared by Drs. Zaidi and Spencer evidenced the same "normal results" as those mentioned in Dr. Kamat's materials. (R. 36) (citing exhibits 21F and 25F). In addition, the ALJ separately described Dr. Zaidi's findings that the Plaintiff "exhibited

13

a symmetric normal gait, some bilateral crepitus in the knees, no focal deficits, normal range of motion, and normal grip, and upper and lower extremity strength," along with "only scattered fibromyalgia tender points" and an "unremarkable" CT scan. (R. 33) (citing exhibit 21F). The ALJ recounted as well that Dr. Spencer's report showed "normal musculoskeletal strength, with no neurological deficits and negative straight leg raise tests." *Id.* (citing exhibit 25F). Lastly, the ALJ observed that Dr. Kamat's opinion that the Plaintiff's disability was partly due to cervical stenosis was "not substantiated by cervical imaging[,] nor supported by [the] examination notes" of another physician, Dr. David Babin. (R. 36) (citing exhibit 16F); *see also* (R. 38) (citing exhibit 16F).

Viewed in their totality, the ALJ's citation to and discussion of these records and other treatment notes adequately support his determination that Dr. Kamat's recommendations were unpersuasive. (R. 37–38). Furthermore, the ALJ's reference to specific exhibits prepared by Dr. Kamat and other providers, which the ALJ addressed and explained throughout his opinion, enables the Court to engage in a meaningful review of the ALJ's evaluation of Dr. Kamat's conclusions. *Rodriguez v. Comm'r of Soc. Sec.*, 2022 WL 807443, at *7 (M.D. Fla. Mar. 17, 2022) (rejecting an argument that the ALJ's persuasiveness determination was deficient where the ALJ referred to "prior portions of her decision in which she provided in-depth evaluations of the evidence of record"); *Roussin v. Comm'r of Soc. Sec.*, 2021 WL 6205948, at *10 (M.D. Fla. Dec. 16, 2021) (concluding that the ALJ's evaluation of supportability and consistency were sufficient because even though the "ALJ did not explicitly state the

findings on which he relied, the findings [were] evident in light of the ALJ's decision as a whole") (internal citations omitted), *report and recommendation adopted*, 2022 WL 19698 (M.D. Fla. Jan. 3, 2022); *Nixon*, 2021 WL 4146295, at *5 ("Although the ALJ did not explicitly discuss [a] particular opinion's supportability and consistency as required by the Regulations, when read in context, it becomes evident the ALJ did not find the opinion supported by or consistent with the balance of the evidence."); *see also Lamirande v. Comm'r of Soc. Sec.*, 2022 WL 1504756, at *4 (S.D. Fla. Apr. 21, 2022) (concluding the ALJ "adequately explained the supportability factor, even though the ALJ did not use the words 'support' or 'supportability[]'" because the ALJ cited to multiple examples to explain why he found a physician unpersuasive, a number of which came from the physician's own records), *report and recommendation adopted*, 2022 WL 1499943 (S.D. Fla. May 12, 2022); *Wandoff o/b/o M.L.M v. Kijakazi*, 2022 WL 1259873, at *5 (S.D. Ga. Feb. 16, 2022) (finding that the ALJ properly articulated her consideration of a medical opinion where she discussed relevant records underlying the supportability and consistency factors throughout the ALJ's decision), *report and recommendation adopted*, 2022 WL 686322 (S.D. Ga. Mar. 8, 2022).

In light of the sufficiency of the ALJ's assessment of Dr. Kamat's opinions, the Plaintiff's challenge to the ALJ's subsequent RFC determination also fails.[9]

---

[9] In the interest of completeness, I am obliged to mention one final point relative to the Plaintiff's first challenge. In her opposition to the Plaintiff's argument, the Commissioner asserts that the ALJ's analysis of the supportability and consistency factors is buttressed by reasons the ALJ did not actually set forth in his decision. (Doc. 26 at 35–36). This type of contention is unavailing, as the Court cannot consider post-hoc rationalizations on appeal. *See Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) (per curiam) ("We cannot affirm based on a post hoc rationale that 'might have

B.

The Plaintiff's second challenge—that the ALJ's hypotheticals to the VE were incomplete because the ALJ did not include all of the limitations found by Dr. Kamat—hinges on the Plaintiff's first claim of error and therefore fails as well. This is because an ALJ is not obligated to incorporate into his queries to a VE those restrictions that the ALJ has properly rejected. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (noting that an ALJ need not include findings in his hypothetical questions to the VE that he has correctly found to be unsupported).

IV.

For the foregoing reasons, I recommend:

1. The Commissioner's decision be affirmed.

2. The Clerk of Court be directed to enter Judgment in the Commissioner's favor and to close the case.

Respectfully submitted this 5th day of August 2022.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

---

supported the ALJ's conclusion.'") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable Thomas P. Barber, United States District Judge
Counsel of record